**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION**

| | | |
|---|---|---|
| LUCIANO MIRANDA, | ) | |
| Plaintiff, | ) | CASE NO: 1:20-cv-01478 |
| | ) | |
| v. | ) | Judge Dan Aaron Polster |
| | ) | |
| PARAGON SYSTEMS, INC., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Luciano Miranda ("Plaintiff" or "Miranda"), by and through counsel, seeks to recover alleged damages and civil penalties arising from his termination with Paragon System, Inc. ("Defendant" or "Paragon"). Pending before the Court is Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment. For the reasons below, the Court **GRANTS** Defendant's Motion, Doc. #: 9.

**I. PROCEDURAL HISTORY**

On June 5, 2020, Miranda filed a two-count complaint alleging breach of contract and promissory estoppel in the Court of Common Pleas, Cuyahoga County, Ohio. Doc. #: 1. On July 6, 2020, Defendant removed the action to this Court, contending that Miranda's state law claims are pre-empted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Id*. On August 3, 2020, Defendant filed its motion to dismiss on the same grounds. Doc. #: 6. Instead of filing a response to Defendant's motion to dismiss, Miranda amended his complaint attempting to remove any prior language indicating that his employment was governed by a collective bargaining agreement ("Amended Complaint"). See Doc. #:7. Miranda filed his Amended Complaint alleging two causes of action: (1) breach of implied contract, and (2) promissory estoppel. *Id.* Subsequently,

1

the Court denied as moot Defendant's motion to dismiss, setting a new deadline of September 7, 2020 for Defendant to file an answer to Miranda's Amended Complaint. Doc. #: 8.

On September 4, 2020, Defendant filed its motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, attaching a collective bargaining agreement ("CBA") and the affidavit of David McCarthy, who was Miranda's captain during the relevant time period. Doc. #: 9. On September 25, 2020, Miranda filed his opposition brief. Doc. #: 10. Defendant filed its reply on October 16, 2020, attaching a memorandum of agreement ("MOA")[1] through an email thread dated May 21, 2014, and Plaintiff's CBA grievance form challenging his termination dated June 24, 2014. Doc. #: 12. On October 26, 2020, because Defendant submitted matters outside of Miranda's Amended Complaint, the Court granted Miranda's motion for leave to file a surresponse to Defendant's reply. Doc. #: 13. On November 5, 2020, Miranda filed his surresponse attaching Phillip Mathews' affidavit, who was the elected vice-president of the United Government Security Officers of America, International Union (the "Union") during the relevant time period. Doc. #: 15. On November 18, 2020, the Court granted Defendant's motion for leave to file a surreply to Plaintiff's surresponse. Doc. #: 16. Defendant filed its surreply to Plaintiff's surresponse on November 19, 2020, attaching relevant emails and an affidavit from Laura Hagan who was Defendant's Vice President of Labor Relations and General Counsel during the relevant time period. Doc. #: 17.

## II. BACKGROUND

On October 19, 2011, Miranda was hired by Paragon's predecessor, DECO Security Inc., as a private security officer ("PSO") at the Celebrezze Federal Building in Cleveland, Ohio. *See* Doc. #: 7 ¶9. Miranda's duties were to maintain security while overseeing civilian and non-

---

[1] The MOA states that the CBA was tentatively agreed to on May 21, 2014 and that it would apply to all grievances filed since February 1, 2014.

civilian access and egress; operate security devices to screen individuals and packages; and monitor and/or prevent the passage of prohibited articles. *Id*. ¶¶ 9-10.

On February 1, 2014, Paragon was awarded the contract to provide building security services for Ohio federal buildings, including Miranda's employment as a PSO. *Id*. ¶¶ 12-16. Once Paragon was awarded the security contract, Paragon's managers – David McCarthy, Frederick Clemons, and Gordon Fox – allegedly assured the PSOs, including Miranda, that their positions would not be affected by Paragon's transition so long as they continued to abide by Paragon's policies and rules contained in the Paragon Systems Security Officer Handbook. *Id*. Later in February 2014, McCarthy and Clemons allegedly notified the PSOs, including Miranda, that until a collective bargaining agreement was adopted by Paragon and their Union, they were to observe all orders, training, and rules governed by Paragon with respect to their job performance. *Id*.

In April 2014, the Federal Protective Service trained the PSOs in the National Weapons Detection Training Program ("NWDTP"). *Id*. ¶ 27. The purpose of this training was to prepare PSOs to perform security entry control. *Id*. ¶ 29. The training instructors told those in attendance, including Miranda, to check for weapons by having individuals remove their belts, outerwear, jewelry, and shoes. *Id*. ¶30. However, contrary to NWDTP's training, Miranda was instructed by supervisor Clemons and McCarthy to stop requiring guests to remove their belts, outerwear, and jewelry on April 21, 2014. *Id*. ¶31. Miranda alleges that the supervisors' instructions were due to the increased complaints of long lines when PSOs followed the NWDTP training. *Id*. ¶33.

The alleged events leading up to Miranda's termination are as follows. On June 9, 2014, Paragon accused Miranda of failing to properly search an individual, who was later found to have a pocketknife. *Id*. ¶ 37. Miranda alleges that he cleared the individual for entry into the building after using the wand to check his waistband, and there was no indication of a weapon.

*Id*. ¶¶ 38-45. Miranda further alleges that Inspector Ramon Garcia told him not to wand more than the belt area because the full search procedure created delays when processing persons entering the building. *Id*. After the incident, Miranda contends that McCarthy, a contractor, and a clerk all walked through the machine with a knife in their hand, yet the machine indicated no threat. *Id*. ¶¶ 49-62. On June 11, 2014, despite the device malfunction, Miranda was notified of his termination for failure to properly screen an individual. *Id*.

### III. DISCUSSION

#### A. Legal Standard

Federal Rule of Civil Procedure 12(d) requires a court to convert a Rule 12(b)(6) motion to dismiss to a motion for summary judgment where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Documents attached to a Rule 12(b)(6) motion are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1997). If the Court chooses to treat a Rule 12(b)(6) motion as a motion for summary judgment under Rule 56, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*.

While Miranda's Union CBA with Defendant is indirectly referenced in the Complaint through Paragraph 9 of the Complaint, Miranda elected not to attach such CBA or any relevant related documents. Because the question of § 301 of the Labor Management Relations Act ("LMRA") pre-emption requires consideration of the CBA and Miranda's Union relationship with Defendant, Defendant's Rule 12(b)(6) motion to dismiss will be converted into a motion for summary judgment.

4

Rule 56 requires that courts give parties notice and a reasonable time to respond. The Court allowed both parties to submit additional briefs and granted free rein in producing documents associated with this matter. *See* Doc. ##: 13-17. Neither party has undercut the authenticity of the documents or emails submitted outside of the Complaint nor did any party request any additional discovery. Accordingly, Defendant's motion will be construed as a motion for summary judgement.

### B. Section 301 of the Labor Management Relations Act

It is well established that a state law claim is pre-empted by § 301 of LMRA unless it exists independently of the CBA. *See Allis-Chalmers*, 471 U.S. at 218; see also *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 (1987). "Section 301 opens the federal courthouse only to 'suits for violation of contracts.' 'Where there is no contract, the courts have no jurisdiction.'" *Bauer v. RBX Indus.*, Inc., 368 F.3d 569, 578 (6th Cir. 2004) (citations omitted); *see Heussner v. Nat'l Gypsum Co.*, 887 F.2d 672, 676 (6th Cir. 1989) ("[U]nder Section 301(a), district courts possess subject matter jurisdiction in cases involving an alleged violation of an existing collective bargaining contract."); *see also Hechler*, 481 U.S. at 859 n.3 ("when a state law claim is substantially dependent on an analysis of a collective bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 by casting the suit as a state law claim.").

A Valid CBA Was in Effect

Here, there is a threshold matter of whether a valid CBA was in effect at times relevant to this action. Miranda asserts that his employment was not covered under a CBA because the CBA was not signed until September of 2014, after Miranda's June 14, 2014 termination. Miranda further contends that the MOA, indicating that the parties tentatively agreed to a CBA prior to

Miranda's termination, lacks authentication because it was not dated nor signed. The Court disagrees.

The existence of a labor contract does not depend on whether it was signed. Instead, courts can look to the parties' conduct to determine whether the parties manifested an intention to be bound by the agreed-upon terms of such contract. *See Kellhoffer v. Columbus S. Power Co*., 192 F. App'x 383, 386 (6th Cir. 2006) ("[t]he existence of a labor contract does not depend on its reduction in writing; it can be shown by conduct manifesting an intention to abide by agreed-upon terms."). As indicated in the record, Defendant and the Union entered into a MOA assenting to process all grievances from its members filed between February 1, 2014 and the ultimate date of ratification of the CBA in accordance with the grievance procedure set forth in the CBA. *See Doc. #: 17, Exs. B-C.* Defendant's and the Union's intent to be bound by the MOA tentatively agreeing to a CBA are revealed in the record by 1) the Union's and Defendant's email correspondence, and 2) Miranda's participation in the grievance procedure pursuant to the CBA.

First, on May 21, 2014, Defendant's Vice President of Labor Relations and General Counsel, Ms. Hagan, sent the MOA to Union representative Jose Diaz as an attachment and stated, "I am happy to advise that Paragon Systems and [the Union] have reached an agreement resolving all issues." *Id*. Mr. Diaz did not respond disputing Ms. Hagan's statement. *Id*. Then, on September 5, 2014, Mr. Diaz wrote to Ms. Hagan clarifying that in accordance with the MOA, "all grievance and arbitration timelines for grievances written between February 1, 2014 and the ratification date of the tentative agreement will be waived. And [the Union] will process them per the language in the [MOA]." *Id*. Not only did Ms. Hagan not respond with any disagreement, she replied: "Jose, that's very good news, thank you. And yes, the agreement is as you described." Therefore, both

6

emails confirm that 1) there was an enforceable MOA in place tentatively agreeing to a CBA, and 2) there were no confusions or dispute over any operative terms regarding the same.

Lastly, to make matters crystal clear, the record shows that all parties actually participated in the grievance procedure outlined in the CBA, relevant to Miranda's termination. On June 24, 2014, ten days after Miranda's termination, Miranda submitted a CBA grievance form in accordance with the CBA. *See* Doc. #: 12, Ex. 4. On July 8, 2015, Defendant formally responded to Miranda's CBA grievance, through a letter sent to his Union, stating, in relevant part:

> On November 9, 2014, Paragon Systems received twenty-six (26) Step 3 grievances from [the Union]. The purpose of this letter is to provide the formal response to those grievances. [] Grievance PO150, on behalf of Luciano Miranda, seeks reinstatement and back pay arising from his termination for multiple security breaches. On separate occasions, Mr. Miranda allowed a knife and large scissors to pass through security without detecting them. This constitutes a serious violation of Paragon policies and Government security regulations. The grievance is denied. I will also note that the grievance is untimely, having been submitted nearly eight weeks after ratification of the CBA. [] Grievance PO139, on behalf of Luciano Miranda, seeks lost wages arising from his suspension for a security breach. As noted above, Mr. Miranda allowed scissors into the Federal facility, which is a serious breach and violation of security regulations. He was properly suspended, and the grievance is denied. [] Should you wish to proceed to arbitration on any of the grievances above, please be advised that the Company reserves its right to argue the defense of untimeliness before the Arbitrator. If you have any questions, please feel free to contact me. *See* Doc. #: 17, Ex. E.

Miranda's own conduct undercuts his contention that there was no binding agreement in place because he challenged his termination under the MOA and CBA. Miranda and the Union remedy, if they disagreed with Defendant's decision, was to submit the matter to arbitration in 2015, which they did not do. [2] Having actively availed himself of the MOA and CBA, Miranda is estopped from claiming, six years later, that these agreements did not exist.

---

[2] If Miranda wanted to pursue arbitration and the Union refused to do so, Miranda could have filed a hybrid § 301 lawsuit against Defendant and the Union.

7

§ 301 Pre-emption Is Necessary

Because not every dispute concerning a CBA is automatically pre-empted by § 301, the Court will examine whether proof of Miranda's state law claims requires interpretation of the collective bargaining agreement terms. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985) ("Of course, not every dispute concerning employment, or tangentially involving a provision [of] a collective bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law . . . It would be inconsistent with congressional intent under that section to pre-empt state rules and obligations, independent of a labor contract.").

The Sixth Circuit applies a two-step approach when deciding whether § 301 complete pre-emption applies to a state law claim. *See Kitzmann v. Local 619-M Graphic Communs. Conference of the Int'l Bhd. of Teamsters*, 415 F. App'x 714, 718 (6th Cir. 2011). First, courts are to examine whether proof of the state law claim requires interpretation of the CBA terms. *Id*. Second, courts ascertain whether the right claimed by the plaintiff is created by the CBA or by state law. *Id*. If the right both arises from state law and does not require contract interpretation, then there is no pre-emption. *Id*. If a state law claim fails either of these two requirements, it is preempted by § 301. *Id*.

Here, Miranda's state law claims centers around a breach of an oral or implied contract stemming from conversations Miranda allegedly had with his then-supervisors regarding his employment rights and obligations. Defendant asserts that such claims are pre-empted by § 301 because Miranda's claims concern rights and duties under a CBA and necessarily involve interpretation of, and reference to, the terms of that CBA. The Court agrees with Defendant. Miranda alleges two causes of action: (1) breach of implied contract, and (2) promissory estoppel.

Under the first step of the two-part pre-emption analysis outlined above, the Court finds that Miranda's breach of an implied contract is inextricably intertwined with consideration of the terms of the CBA. As stated above, Miranda was clearly a member of the Union, which had a binding CBA in place with Defendant, at the time of his termination. *See* Doc. #: 7 ¶16 at 3 (indicating that Miranda was part of the Union). The CBA supersedes any and all prior agreements or understandings of the parties as stated in Section 18.1 of the CBA. *See* Doc.#: 9, Ex. 2; *see DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) ("Section 301 pre-empts state law rules that substantially implicate the meaning of collective bargaining agreement terms."). Accordingly, it is clear that whether Miranda's conduct merited termination, and whether Defendant failed to follow proper procedures to terminate him, goes to the meaning and interpretation of the CBA as his employment rights are created solely by the CBA. *See Jones v. General Motors*, 939 F.2d 380, 383 (6th Cir. 1991) ("Section 301 pre-empts all breach of contract claims where the allegedly breached contract is a CBA or was created pursuant to a CBA."); *see also Ulrich v. Goodyear Tire & Rubber Corp.*, 884 F.2d 936, 938 (6th Cir. 1989). Therefore, Miranda's breach of an implied contract claim is preempted and must be dismissed.

For Miranda's promissory estoppel claim, both prongs of the pre-emption analysis are also satisfied. Miranda contends that Defendant's managers allegedly made certain promises and representations to him that led to his belief that he would not "lose [his] job without just cause." *See* Doc. #: 7 ¶80 at 10. However, as stated above, the CBA governed Miranda's employment and prohibited Miranda from engaging in separate conflicting agreements. *See Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996) (holding a promissory estoppel theory allows for recovery only when no contract exists). Therefore, Miranda's promissory estoppel claim is preempted and must be dismissed. *see Fox v. Parker Hannifin Corp.*, 914 F.2d

9

795, 800-01 (6th Cir. 1990) (finding a breach of contract and promissory estoppel claim are pre-empted by federal labor law because employees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims); *see also Maushund v. Earl C. Smith, Inc*., 795 F.2d 589, 590-91 (6th Cir. 1986) ("The collective bargaining process prohibits [plaintiff] from engaging in separate negotiations with the company and precludes any actions to enforced such an agreement.").

## IV. CONCLUSION

The documents and affidavits submitted by both parties clearly show the existence of a labor/management agreement between Defendant and Miranda's Union at the time of Miranda's termination in June 2014. Further, Miranda availed himself of remedies under the agreements by grieving his termination. His state law claims are an untimely effort to do an end run around the CBA. Accordingly, the Court **GRANTS** Defendant's Motion for summary judgment. Miranda's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster December 29, 2020*
**Dan Aaron Polster**
**United States District Judge**